FREUND & BRACKEY LLP
Thomas A. Brackey II (SBN 162279)
    *tbrackey@freundandbrackey.com*
Joshua G. Zetlin (SBN 273086)
    *jzetlin*@freundandbrackey.com
427 North Camden Drive
Beverly Hills, CA 90210
Tel: 310-247-2165
Fax: 310-247-2190

Attorneys for Plaintiff,
    CUTTING EDGE MUSIC (HOLDINGS) LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUTTING EDGE MUSIC (HOLDINGS) LIMITED, a United Kingdom Company<br><br>    Plaintiff,<br><br>    v.<br><br>ABEL MAKKONEN TESFAYE, a/k/a THE WEEKND, an individual; EMMANUEL NICKERSON a/k/a MILLION DOLLAR MANO, an individual; CARLO MONTAGNESE, a/k/a ILLANGELO, an individual, AHMAD BALSHE a/k/a BELLY, an individual, UNIVERSAL MUSIC GROUP, a California Corporation; REPUBLIC RECORDS, a New York Corporation; WARNER CHAPPELL MUSIC, a Delaware Corporation; SONY/ATV MUSIC PUBLISHING, LLC, a Delaware limited liability company; SONGS MUSIC PUBLISHING, LLC, a New York limited liability company; WB MUSIC CORP, a California corporation, CONNOISSEUR OF CONNISSEURS, an entity of unknown origin; CP MUSIC GROUP INC., an entity of unknown origin; SONGS OF SMP, an entity of unknown origin; SONGS OF HEAR THE ART, an entity of unknown origin; SONY/ATV BALLAD, an entity of unknown origin; XO, an entity of unknown origin; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 15-mc-00296<br><br>COMPLAINT FOR:<br>1. Violation of 17 U.S.C. §101 et seq. (Copyright Infringement);<br>2. Unjust Enrichment;<br>3. Demand for Accounting;<br>4. Constructive Trust; and<br>5. Permanent Injunction.<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff, CUTTING EDGE MUSIC (HOLDINGS) LIMITED, by and through its attorneys Freund & Brackey LLP, hereby complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is a civil action arising under the United States Copyright Act. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. §1121, 17 U.S.C. § 501, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) as well as pendant jurisdiction over all state claims.

2. Exercise of specific personal jurisdiction over Defendants is consistent with the principles of due process as enumerated in the California and U.S. Constitutions, as Defendants have minimum contacts with California such that maintenance of this suit does not offend traditional notions of fair play and substantial justice. Upon information and belief: (1) Defendants operate at least one business through which they have specifically targeted Californians; (2) Defendants have intentionally infringed CEMH's registered copyrights, which acts are expressly aimed at CEMH's business activities in California, and have harmed CEMH, the brunt of which it has suffered, and which Defendants know is likely to be suffered, in California; and (3) CEMH's claims arise out of or result from the Defendants' activities in California.

3. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) and 28 U.S.C. §1400(a).

**INTRODUCTION**

4. This Complaint is brought to redress Defendants' ABEL MAKKONEN TESFAYE, a/k/a THE WEEKND, EMMANUEL NICKERSON a/k/a MILLION DOLLAR MANO, CARLO MONTAGNESE, a/k/a ILLANGELO, AHMAD BALSHE a/k/a BELLY, UNIVERSAL MUSIC GROUP, REPUBLIC RECORDS, WARNER CHAPPELL MUSIC, SONY/ATV MUSIC PUBLISHING, LLC,

SONGS MUSIC PUBLISHING, LLC, WB MUSIC CORP, CONNOISSEUR OF CONNISSEURS, CP MUSIC GROUP INC., SONGS OF SMP, SONGS OF HEAR THE ART, SONY/ATV BALLAD, and XO's, (also "Defendant" or "Defendants" collectively) willful violation of Plaintiff CUTTING EDGE MUSIC (HOLDING) LIMITED's ("CEMH")'s exclusive interest in the copyrighted musical composition of an original song, titled "Revolution" on the soundtrack album and "Revolution Sequence" on the cue sheet, (the "Track") from the score for the motion picture entitled *The Machine*. With full knowledge of CEMH's copyright in the Track, and without CEMH's permission, Defendants blatantly copied a unique and significant portion of the Track and included it in a high profile and widely distributed single and album, thereby infringing on the copyrights exclusively licensed by CEMH. CEMH requests statutory and/or actual damages and an injunction under the U.S. Copyright Act, 17 U.S.C. § 101, et seq., along with monetary and injunctive remedies for Defendants' unauthorized exploitation of the Track and their unjust enrichment therefrom.

## THE PARTIES

5.   Plaintiff CUTTING EDGE MUSIC (HOLDINGS) LIMITED is a United Kingdom company with its principal place of business in London, England. CEMH provides financing to motion picture productions and acquires interests in film score compositions and sound recordings. It creates significant value for its investors by exploiting its catalogue of film score rights across a variety of platforms. CEMH is the exclusive licensee and administrator of the original composition and sound recording in and to the score of the motion picture entitled *The Machine* (the "Score"), originally composed by Tom Raybould, which includes the Track. CEMH also holds, via written instrument, the right to prosecute claims relating to the Score.

6.   Defendant ABEL MAKKONEN TESFAYE, a/k/a THE WEEKND ("THE WEEKND"), an individual, is a well-known Canadian singer, songwriter and record

producer, responsible for performing and popularizing numerous songs. Upon information and belief, THE WEEKND popularized, regularly performs, claims ownership in, and shares in the revenue stream from the Billboard Hot 100 chart-topping song entitled "The Hills" (hereinafter the "Infringing Song"), which appeared initially as a single and subsequently as the fifth track on the studio album entitled "Beauty Behind the Madness" (the "Infringing Album").

7. Defendant EMMANUEL NICKERSON a/k/a MILLION DOLLAR MANO ("MANO"), an individual, is a prominent music producer who has worked with numerous notable musicians including Kanye West. Upon information and belief, MANO helped to compose, claims ownership in, and shares in the revenue stream from the Infringing Song and the Infringing Album.

8. Defendant CARLO MONTAGNESE a/k/a ILLANGELO ("ILLANGELO") is a Grammy Award-winning music producer, songwriter, musician and mixing engineer, who rose to prominence as the long-time collaborator of Defendant THE WEEKND. Upon information and belief, ILLANGELO helped to compose, claims ownership in, and shares in the revenue stream from the Infringing Song and the Infringing Album.

9. Defendant AHMAD BALSHE a/k/a BELLY ("BELLY") is a highly successful rapper who has written numerous successful songs for other artists and frequently collaborates with THE WEEKND. Upon information and belief, BELLY helped to compose, claims ownership in, and shares in the revenue stream from the Infringing Song and the Infringing Album.

10. Defendant UNIVERSAL MUSIC GROUP ("UMG") is a corporation organized and existing under the laws of the State of California. CEMH is informed and believes that UMG is manufacturing and distributing the Infringing Song and the Infringing Album and participating in the revenue stream of the Infringing Song and the Infringing Album. Additionally, CEMH is informed and believe that UMG

claims an ownership interest in the sound recording of the Infringing Song and the Infringing Album.

11. CEMH is informed and believe that Defendant REPUBLIC RECORDS ("REPUBLIC") is a corporation organized and existing under the laws of the State of New York, which upon information and belief, regularly conducts business in Los Angeles County, California. CEMH is informed and believes that REPUBLIC is the record label responsible for production, manufacture, distribution, marketing, and promotion of the Infringing Song and the Infringing Album, as well as participating in the revenue stream therefrom. Additionally, CEMH is informed and believes that REPUBLIC claims an ownership interest in the sound recording of the Infringing Song and the Infringing Album.

12. Defendant WARNER/CHAPPELL MUSIC, INC. ("WARNER/CHAPPELL") is a corporation organized and existing under the laws of the State of Delaware, which is registered as a foreign entity in California and upon information and belief, regularly conducts business in Los Angeles County. WARNER/CHAPPELL is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, WARNER/CHAPPELL claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

13. Defendant SONY/ATV MUSIC PUBLISHING LLC ("SONY/ATV") is a limited liability company organized and existing under the laws of the State of Delaware, which is registered as a foreign entity in California and upon information and belief, regularly conducts business in Los Angeles County. SONY/ATV is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, SONY/ATV claims an ownership interest in the

Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

14. Defendant SONGS MUSIC PUBLISHING, LLC ("SMP") is a limited liability company organized and existing under the laws of the State of New York, which is registered as a foreign entity in California and upon information and belief, regularly conducts business in Los Angeles County. SMP is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, SMP claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

15. CEMH is informed and believes Defendant WB MUSIC CORP ("WBMC") is a corporation organized and existing under the laws of the State of California, and has its principal office in Los Angeles County. WBMC is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, WBMC claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

16. Defendant CONNOISSEUR OF CONNISSEURS ("COC") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. COC is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, COC claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

17. Defendant CP MUSIC GROUP INC. ("CPMG") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. CPMG is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, CPMG claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

18. Defendant SONGS OF SMP ("SOS") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. SOS is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, SOS claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

19. Defendant SONGS OF HEAR THE ART ("SOHTA") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. SOTHA is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, SOTHA claims an ownership interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

20. Defendant SONY/ATV BALLAD ("SAB") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. SAB is a music publishing company, which CEMH is informed and believes, is responsible for exploiting the composition of the Infringing Song and the Infringing Album. Upon information and belief, SAB claims an ownership

interest in the Infringing Song and also participates in the revenue stream from the Infringing Song and the Infringing Album.

21. Defendant XO ("XO") is an entity of unknown designation that CEMH is informed and believes conducts business in Los Angeles County. CEMH is informed and believes that XO is claiming an ownership interest in, and participating in the revenue stream from, the Infringing Song and the Infringing Album. Defendant THE WEEKND asserts that XO is his "label" and that XO is in some manner responsible for the behavior constituting the unauthorized exploitation of the Track.

22. CEMH is unaware of the names and true capacities of Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership and/or other entity, and therefore sue them by their fictitious names. CEMH will seek leave to amend this Complaint when their true names and capacities are ascertained.

23. CEMH is informed and believes, and based thereon allege, that Defendants and DOES 1 through 10, inclusive, are each in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other Defendants, each of whom obtained financial benefit from the Defendants' acts and omissions, and each of whom was acting within the course and scope of said agency and employment.

24. CEMH is informed and believe, and based thereon allege, that at all relevant times herein, Defendants, and DOES 1 through 10 inclusive, did aid, abet, participate in, contribute to, or benefit from the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior.

25. CEMH further alleges that Defendants and DOES 1 through 10, inclusive, had a non-delegable duty to prevent or cure such acts and the behavior described

herein, which duty Defendants and DOES 1 through 10, inclusive, failed and/or refused to perform.

## FACTUAL BACKGROUND

26. Cutting Edge Music Services Limited, a motion picture music services company that regularly provides music supervisory services on major international blockbuster films, commissioned Tom Raybould ("Raybould"), a well-respected and widely known composer, to create the musical Score for a motion picture entitled *The Machine*. The Score included the Track, and the Track was featured in the final cut of *The Machine* and on the film's soundtrack album.

27. In the written agreement commissioning creation of the Score for *The Machine*, Raybould covenanted to enter into an agreement with 3AM Music Limited ("3AM"), under which he would assign the copyright and all other rights in and to the entire Score, including the Track, to 3AM.

28. On June 11, 2013, Raybould and 3AM entered into a written agreement, titled "Assignment of Rights" pursuant to which Raybould irrevocably assigned to 3AM "all rights including without limitation the entire worldwide copyright and all rights of action and all other rights of whatever nature" in and to the composition and sound recording of the Score, which included the Track.

29. The first public screening of *The Machine* occurred on April 20, 2013, at the Tribeca Film Festival, and constituted the initial public performance of the Score and its constituent Track.

30. The soundtrack album of the Score, containing the Track, was released to the public on April 22, 2014.

31. *The Machine* was released theatrically in the United States on April 25, 2014.

32. Raybould received the prestigious 2013 Best Original Music BAFTA Cymru Award for composing the Score of *The Machine*.

33. Pursuant to a written Administration Agreement between CEMH and 3AM, 3AM granted to CEMH an exclusive license to administer, control, use, and exploit, and otherwise deal in all right title and interest, including the worldwide copyright, in the composition and sound recording of the Score. This license grant specifically included the sole and exclusive right to prosecute, defend and/or settle any third party action or claim relating to the Score.

34. Pandora Films Ltd., producer of *The Machine*, registered *The Machine* with the United States Copyright Office as a Motion Picture work. The film received Registration Number PA0001875037.

35. 3AM submitted its own separate application to register the composition of the Score, and specifically including the Track as a title included in the application, as a work of Performing Arts. 3AM deposited via electronic upload a copy of the Score with the United States Copyright Office and paid the registration service fee. The registration case is currently pending with the United States Copyright Office.

36. On or about March 9, 2015, Defendant MANO sent Raybould a Twitter direct message stating "I sampled your music might make it 2 the weeknd next album. Huge fan of what u did 4 the machine movie!"

37. On or about May 27, 2015, Defendant THE WEEKND, through his labels XO and REPUBLIC, released the Infringing Song, as the second single from The WEEKND's then-forthcoming second studio album entitled "Beauty Behind the Madness", the Infringing Album. The Infringing Album was subsequently released on August 28, 2015, by Defendants XO and REPUBLIC, and featured the Infringing Song as its fifth track.

38. The Infringing Song contains materials bearing substantial similarity to original and unique portions of the Track ("Revolution") appearing 2 minutes 26 seconds from the beginning of the Track (for purposes of clarity, a portion

beginning 2 minutes and 26 seconds into the Track "Revolution" a/k/a "Revolution Sequence" appears throughout the Infringing Song).

39. Specifically, both the Infringing Song and the Track featuring synthesizer bass-lines performed with almost identical idiosyncratic sounds at the same register and using the same pitch sequence, melodic phase structure and rhythmic durations. The Infringing Song and the Track also share other distinct melodic, rhythmic and formatted similarities. The essential elements from the Track recur throughout the Infringing Song, forming a type of bed within the Infringing Song. Furthermore, a distinctive decorative note omission occurs at the same place within the musical part in both the Track and the Infringing Song.

40. These strong musicological similarities between the Infringing Song and the Track reinforce the conclusion that the Infringing Song represents a copying of the Track.

41. Upon information and belief, the Infringing Song was jointly produced by Defendants MANO and ILLANGEL. The Infringing Album credits Defendants MANO and ILLANGEL with producing the Infringing Song.

42. Upon information and belief, the Infringing Song was jointly written by Defendants MANO, ILLANGEL, BELLY and THE WEEKND. The Infringing Album, ASCAP and BMI all credit Defendants MANO, ILLANGEL, BELLY and THE WEEKND with writing the Infringing Song.

43. Upon information and belief, the Infringing Song was recorded and performed by THE WEEKND. The Infringing Album credits THE WEEKND with performing the Infringing Song.

44. Upon information and belief, Defendants XO, REPUBLIC, and UMG are the labels and distributors who were and are involved with the creation, manufacture, release, marketing, distribution, public performance and other exploitation of the Infringing Song and the Infringing Album.

45. Upon information and belief, Defendants WARNER/CHAPPELL, SONY/ATV, SMP, WBMC, COC, CPMG, SOS, SOHTA and SAB are the music publishers who were and are involved with the release, reproduction, distribution, administration, public performance and other exploitation of the Infringing Song and the Infringing Album.

46. The Infringing Song and the Infringing Album were released, distributed and marketed throughout the United States, including California, and throughout the rest of the World.

47. The single release of the Infringing Song debuted on the Billboard Hot 100 at number 20 for the chart dated June 13, 2015, and received first-week digital download sales of 109,000 copies and 5.2 million domestic streams. The Infringing Album debuted at number one on the Billboard 200, with sales of approximately 326,000 copies in its first week. As of October 19, 2015 music industry publication Billboard reported "The Weeknd's 'The Hills' tops the Billboard Hot 100 for a fifth week… 'The Hills' leads Radio Songs for a fourth week (150 million in audience, up 1 percent) and rebounds 2-1 for a third frame atop Streaming Songs (20 million U.S. Streams, up 14 percent). 'Hills' also notches a fifth week at No. 1 on Billboard's Hot R & B/Hip-Hop Songs chart." Upon information and belief, both the single version of the Infringing Song and the Infringing Album have become huge commercial successes and have generated millions of sales and streams, and continue to be sold and streamed worldwide.

48. The Infringing Song obtained even greater publicity and dissemination via remixes created by several prominent musicians. These include a remix by American rapper Eminem, publicly posted on YouTube on or about October 10, 2015, a remix performed jointly by Nicki Minaj and THE WEEKND on *Saturday Night Live*, and a remix Lil Wayne included on his mixtape entitled 'No Ceilings 2'.

49. On December 7, 2015 the Infringing Album was nominated for seven Grammy Awards, including Best Album of the Year.

50. At this time, Defendants continue to engage in infringing activities.

## FIRST CAUSE OF ACTION

### Copyright Infringement in violation of 17 U.S.C. § 101 et seq.

### (Against All Defendants)

51. CEMH realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 50, inclusive.

52. CEMH is the exclusive licensee of the U.S. copyright in all right, title and interest in the musical composition of the Score, including the Track, written by Raybould, and the sole party empowered to prosecute actions and claims relating to the Score. The musical composition is properly registered with the United States Copyright Office.

53. Defendants intentionally and knowingly infringed the copyright in the Track by reproducing, adapting, copying, publicly distributing, publicly displaying, publicly performing and otherwise exploiting distinct, important and recognizable portions of the work without CEMH's consent. In so doing, Defendants acted in violation of CEMH's exclusive rights under the Copyright Act.

54. CEMH did not and does not authorize any of the Defendants, or any of Defendants' agents, to utilize, reproduce, adapt, copy, create derivative works, distribute, display, or otherwise exploit any portion of its work, including the musical composition of the Track, or to interpolate any portion of the Track into the Infringing Song.

55. As a direct result of Defendants' willful acts of copyright infringement as described herein, CEMH has suffered substantial damage, in an amount to be proven at trial.

56. Since Defendants' acts have also caused CEMH irreparable, ongoing injury of a nature that cannot be adequately compensated or measured in damages, CEMH has no adequate remedy at law and will suffer immediate and irreparable loss, damage and injury unless Defendants are restrained and enjoined from continuing to engage in such wrongful conduct.

## SECOND CAUSE OF ACTION

### [Unjust Enrichment]

### (Against All Defendants)

57. CEMH realleges and incorporate by reference each and every allegation set forth in paragraphs 1 through 56, inclusive.

58. By reason of the foregoing facts, Defendants, and each of them, have become unjustly enriched at the expense of CEMH by failing to license from CEMH the right to use the Track and by realizing monetary gain from their unauthorized use of CEMH's Track.

59. Defendants, and each of them, have been unjustly enriched in an amount which cannot be precisely ascertained at this time, but will be ascertained according to proof at trial.

## THIRD CAUSE OF ACTION

### [Demand for Accounting]

### (Against All Defendants)

60. CEMH realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 59, inclusive.

61. As seen above, CEMH has an interest in all of the money that is generated from the distribution and exploitation of the Infringing Song as a single and the Infringing Album in that they are the exclusive copyright licensees of the Track.

62. CEMH is informed and believes that Defendants have generated an undetermined, yet substantial amount of money, due to the commercial success of the Infringing Song and the Infringing Album through sales, distribution, promotion, circulation, and other exploitation of CEMH's original musical composition of the Track in the Infringing Song and on the Infringing Album, and as contained on other compilations and fixations.

63. The amount of money due from Defendants is unknown to CEMH and cannot be ascertained without an accounting of all of the Defendants' financial records related to the Infringing Song and the Infringing Album.

64. As a result of Defendants' actions, or lack thereof, CEMH has been damaged in an amount to be proven after an accounting has been conducted. Accordingly, CEMH hereby requests that the Court order an accounting of all of Defendants' financial records related to the Infringing Song and the Infringing Album in order to determine the sums rightfully due to CEMH. Furthermore, CEMH demands that those sums be paid to them.

## FOURTH CAUSE OF ACTION

### [Constructive Trust]

### (Against All Defendants)

65. CEMH realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 64, inclusive.

66. CEMH is informed and believes Defendants have generated an undetermined, yet substantial amount of money due to the commercial success of the Infringing Song and the Infringing Album through sales, distribution, promotion, circulation, administration and other exploitation of the Infringing Song and the Infringing Album.

67. As seen above, CEMH is entitled to all of the money that is generated from the nonconsensual exploitation of their Track in that they are entitled to

receive all profits and a licensing fee. CEMH has not given their consent for Defendants to utilize their original musical composition of the Track to create the Infringing Song; therefore, CEMH has not been paid any licensing fee conferring such privilege on Defendants.

68. By failing to provide CEMH with the licensing fee required to create and exploit the Infringing Song, Defendants have violated CEMH's rights and have been unjustly enriched in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### [Permanent Injunction]

### (Against All Defendants)

69. CEMH realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 68, inclusive.

70. In or about March 2015 and continuing until the present, Defendants, and each of them, have promoted, advertised, administered, performed, sold and otherwise exploited the Infringing Song and the Infringing Album, or caused the Infringing Song and the Infringing Album to be promoted, advertised, administered, performed, sold and otherwise exploited, without CEMH's consent and without payment.

71. These actions by and on behalf of Defendants are wrongful and should be enjoined in that they have caused, and continue to cause, CEMH great and irreparable injury.

72. CEHM has no other plain, speedy or adequate remedy at law, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to CEMH's interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CUTTING EDGE MUSIC (HOLDINGS) LIMITED prays for judgment against Defendants, and each of them, as follows:

## ON THE FIRST CAUSE OF ACTION

1. That the Court adjudge and decree that the Defendants have willfully infringed CEMH's exclusive rights under copyright law;

2. That the Defendants, and those acting in concert with them, be permanently enjoined from engaging in further acts of copying the Track;

3. That Defendants, and those acting in concert with them, be permanently enjoined from exploiting any products substantially similar to the Track;

4. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the Defendants' profits at an amount to be proven at trial, or in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

5. That Defendants disgorge all profits derived from their wrongful conduct;

6. Interest at the maximum legal rate;

7. All reasonable attorney's fees and costs incurred herein;

8. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

## ON THE SECOND CAUSE OF ACTION

1. That CEMH be awarded the monies gained by Defendants at CEMH's expense through the unauthorized use of the Track.

2. That the Defendants, and those acting in concert with them, be permanently enjoined from engaging in further acts of infringement by making, promoting, distributing, administering, performing, selling or otherwise exploiting the Infringing Song and the Infringing Album in their current state, until CEMH has received proper credit and consideration for the use of the Track from which the Infringing Song was copied.

3. Interest at the maximum legal rate from the date the Infringing Song was released to the public.

4. All reasonable attorney's fees and costs incurred herein;

5. That Defendants be ordered to account for and recall from distribution channels any and all copies of the Infringing Song and the Infringing Album so as to permanently remove them from the stream of commerce; and

6. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

## ON THE THIRD CAUSE OF ACTION

1. That the Court order an accounting of all Defendants' financial records relating to the Infringing Song and the Infringing Album in order to determine the sums of money owed to CEMH;

2. Upon a determination of sums due to CEMH, demand is made that those sums be paid to CEMH;

3. Interest at the maximum legal rate from the date said sums were due;

4. All reasonable attorney's fees and costs incurred herein; and

5. Any other relief deemed by the Court to be just and reasonable.

## ON THE FOURTH CAUSE OF ACTION

1. That the Court imposes an actual or constructive trust upon Defendants in favor of CEMH with respect to all income received by them from exploitation of the Infringing Song and the Infringing Album;

2. An award of restitution in an amount greater than or equal to Defendants' unjust enrichment, the value of which is to be determined by proof at trial;

3. Interest at the maximum legal rate from the date of public distribution of the Infringing Song;

4. All reasonable attorney's fees and costs incurred herein; and

5. Any other relief deemed by the Court to be just and reasonable.

///

///

## ON THE FIFTH CAUSE OF ACTION

1. For a permanent injunction prohibiting Defendants, and those acting in concert with them, from engaging in further acts of infringement by making, promoting, distributing, administering, performing, selling or otherwise exploiting the Infringing Song and the Infringing Album in their current state.

2. Further that Defendants be ordered to account for and recall from distribution channels any and all copies of the Infringing Song and the Infringing Album so as to permanently remove then from the stream of commerce;

3. All reasonable attorney's fees and costs incurred herein; and

4. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

DATED: December 9, 2015                FREUND & BRACKEY, LLP


By:   /Thomas A. Brackey II/
Thomas A. Brackey II,
Joshua G. Zetlin
Attorneys for Plaintiff,
CUTTING EDGE MUSIC
(HOLDINGS) LIMITED

## DEMAND FOR JURY TRIAL

Plaintiff CUTTING EDGE MUSIC (HOLDINGS) LIMITED hereby demand a jury trial on all issues triable of right by jury

DATED: December 9, 2015　　　　　　　FREUND & BRACKEY, LLP

　　　　　　　　　　　　　　　　　　By:　_/Thomas A. Brackey II/_____
　　　　　　　　　　　　　　　　　　　　Thomas A. Brackey II,
　　　　　　　　　　　　　　　　　　　　Joshua G. Zetlin
　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff,
　　　　　　　　　　　　　　　　　　　　CUTTING EDGE MUSIC
　　　　　　　　　　　　　　　　　　　　(HOLDINGS) LIMITED